**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone   713 999 5228
fax       713 999 1187

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAIN WELLS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COLONIAL COMPLIANCE SYSTEMS, INC., a Georgia corporation,<br><br>Defendant. | Case No. 3:19-cv-07810<br><br>**Plaintiff's Original Class and Collective Action Complaint for Damages**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. § 201,** *et seq.***)**<br>2. **Violation of Pennsylvania Miminum Wage Act (43 P.S. § 333.104,** *et seq.***)**<br>3. **Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders)**<br>4. **Failure to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders)**<br>5. **Violations of record keeping requirements (CAL. LAB. CODE § 226)**<br>6. **Misclassification penalties (CAL. LAB. CODE § 226.8)**<br>7. **Advising misclassification (CAL. LAB. CODE § 2753)**<br>8. **Waiting time penalties (CAL. LAB. CODE § 203)**<br>9. **Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***)** |

## SUMMARY

1. Iain Wells brings this lawsuit to recover unpaid overtime wages and other damages owed by Colonial Compliance Systems, Inc. (Colonial).

2. Wells worked for Colonial as a Marine Surveyor/Marine Consultant.

3. Wells and the other workers like him regularly worked in excess of 40 hours each week.

4. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, the PMWA, and California law, Colonial improperly classified Wells and other similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

6. Colonial never paid Wells, or the other workers like him, a salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

10. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

12. Wells worked for Colonial in this District and Division.

13. Specifically, Wells worked for Colonial in the County of San Francisco, California.

14. Indeed, Wells regularly worked overtime for Colonial in the County of San Francisco, California.

15. Despite regularly working over 40 hours, Colonial paid Wells a day rate with no overtime for the work he did for Colonial in the County of San Francisco, California.

16. Colonial conducts substantial business operations in this District and Division.

17. Specifically, Colonial hires Marine Surveyors/Marine Consultants, like Wells, to provided services to its clients in the County of San Francisco, California.

**INTRADISTRICT ASSIGNMENT**

18. A substantial part of the events or omissions giving rise to the claim occurred in and around the County of San Francisco, California.

19. This matter is therefore properly assigned to the District's San Francisco or Oakland Divisions. Civ. L.R. 3-2(d).

**THE PARTIES**

20. Wells worked for Colonial as a Marine Surveyor/Marine Consultant from approximately 2013 until January 2019.

21. Throughout his employment with Colonial, Wells was paid a day rate with no overtime compensation and was classified as an independent contractor.

22. In fact, Wells was Colonial's employee.

23. Wells's consent to be a party plaintiff is attached as Exhibit A.

24. Wells brings this action on behalf of himself and all other similarly situated workers who were paid by Colonial's day rate system.

25. Colonial paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA and the PMWA.

26. The collective of similarly situated employees or putative class members (the "FLSA Class") sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, Colonial in the United States during the past 3 years who were paid a day rate.**

27. Wells also seeks class certification of a class under the PMWA (the "Pennsylvania Class"), pursuant to Federal Rule of Civil Procedure 23, as follows:

> **All workers employed by, or working on behalf of, Colonial in Pennsylvania during the past 3 years who were paid a day rate.**

28. Wells also seeks class certification of such a class under California law (the "California Class"), pursuant to Federal Rule of Civil Procedure 23, as follows:

> **All workers employed by, or working on behalf of, Colonial in California during the past 4 years who were paid a day rate.**

29. The FLSA, Pennsylvania, and California Class Members are referred to collectively as the Day Rate Workers.

30. Colonial is a corporation that may be served by serving its registered agent: **Clayton D. Cheshire, 101 North Lathrop Avenue, Savannah, Georgia 31415**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

31. At all relevant times, Colonial has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

32. At all relevant times, Colonial has been part of an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

33. At all relevant times, Colonial has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1). Colonial has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

34. In each of the last 3 years, Colonial has had annual gross volume of sales made or business done of at least $1,000,000.

35. At all relevant times, Wells and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

36. Colonial treated Wells and the Day Rate Workers as employees and uniformly dictated the pay practices applied to Wells and the Day Rate Workers.

37. Colonial's misclassification of Wells and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA, the PMWA, or California law.

**FACTS**

38. Colonial "[s]pecializ[es] is maritime safety, security, and environmental compliance, … provid[ing] assistance to ship owners, managers, agents, and crews who must comply with the International Conventions such as SOLAS and MARPOL as well as those required by the U.S. Code of Federal Regulations. … [Colonial] provide[s] safety inspection and auditing assistance to vessels worldwide."[1]

39. To complete its business objectives, Colonial hires personnel to perform work as marine surveyors/marine consultants.

40. Colonial does not hire these workers on a project-by-project basis.

41. Rather, Colonial hires and treats these workers just like regular, even if sometimes short term, employees.

42. Colonial pays, and handles payroll, for the personnel it sends to various vessels to provide inspection services.

43. Many of these individuals worked for Colonial on a day rate basis (without overtime pay) and were misclassified as independent contractors.

44. These workers make up the proposed class of Day Rate Workers.

45. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

46. Colonial classified its Marine Surveyors/Marine Consultants as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

47. Colonial did not pay any of its Marine Surveyors/Marine Consultants overtime pay for hours that they worked in excess of 40 in a workweek.

---

[1] http://compliancesystemsinc.com/our-history/ (last visited Nov. 27, 2019).

Pl's Original Complaint   No. 3:19-cv-07810   - 5 -

PARMET PC

48. For example, Wells worked for Colonial as a Marine Surveyor/Marine Consultant from approximately 2013 until January 2019.

49. Wells worked for Colonial in California.

50. Wells also worked for Colonial in Pennsylvania.

51. As a Marine Surveyor/Marine Consultant, Wells's primary job duties included inspecting vessels pursuant to a checklist of over 25 pages, taking pictures to documents issues that need to be corrected, and producing a report to his Colonial supervisor regarding vessel maintenance and compliance.

52. As a Marine Surveyor/Marine Consultant, the vessels on which Wells worked were not moving. Rather, they were at a facility or in the anchorage.

53. Throughout his employment with Colonial, he was classified as an independent contractor and paid on a day rate basis.

54. Wells and the Day Rate Workers worked for Colonial under its day rate pay scheme.

55. Wells and the Day Rate Workers did not receive a salary.

56. If Wells and the Day Rate Workers did not work, they did not get paid.

57. Rather, Wells and the Day Rate Workers received a day rate.

58. But Wells and the Day Rate Workers did not receive overtime pay.

59. This is despite the fact Wells and the Day Rate Workers regularly worked more than 40 hours in a workweek.

60. For example, Wells received a day rate of approximately $450 for each day he worked for Colonial.

61. Wells and the Day Rate Workers received the day rate regardless of the number of hours they worked in excess of 40 in a work week.

62. Indeed, Wells and the Day Rate Workers regularly worked over 8 hours in a day, and often over 12 hours in a day, for up to 7 days a week.

63. Without the job performed by Wells and the Day Rate Workers, Colonial would not be able to complete its business objectives or providing maritime inspection services.

64. Wells and the Day Rate Workers relied on Colonial for work and compensation.

65. Wells and the Day Rate Workers worked in accordance with the schedule set by Colonial and its clients.

66. Wells and the Day Rate Workers cannot subcontract out the work they are assigned by Colonial.

67. Wells and the Day Rate Workers must follow Colonial and its clients' policies and procedures.

68. Wells and the Day Rate Workers' work must adhere to the quality standards put in place by Colonial and its clients.

69. Wells and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

70. Wells and the Day Rate Workers did not possess any specialized or unique skill set.

71. Wells and the Day Rate Workers did not market their services while employed by Colonial.

72. Wells and the Day Rate Workers worked exclusively for Colonial during the relevant period.

73. Wells and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and/or insurance.

74. Colonial and/or its clients set Wells and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Colonial.

75. At all relevant times, Colonial and/or its clients maintained control, oversight, and direction of Wells and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

76. Colonial knew Wells, and other Day Rate Workers, worked more than 40 hours in a week.

77. Colonial knew, or showed reckless disregard for whether, the Day Rate Workers were not exempt from the FLSA, the PMWA, and California law's overtime provisions.

78. Nonetheless, Colonial failed to pay Wells and the other Day Rate Workers overtime.

79. Colonial knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA, the PMWA, and the California law.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

80. Numerous employees have been victimized by this pattern, practice, and policy, which is willful violation of the FLSA, the PMWA, and California law.

81. Many of these Day Rate workers worked with Wells and reported that they were paid in the same manner and were not properly compensated for all hours worked, as required by the FLSA, the PMWA, and California law.

82. Thus, from Wells's observations and discussions with these day rate employees, he is aware that the illegal practices or policies of Colonial have been imposed on a distinct group of day rate employees.

83. These employees were all paid a day rate without overtime compensation.

84. These day rate employees are victims of Colonial's unlawful compensation practices and are similarly situated to Wells in terms of pay provisions and employment practices.

85. Colonial's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the day rate employees.

86. Thus, Wells's experiences are typical of the experiences of the Day Rate Workers he seeks to represent.

87. The specific job titles or precise job locations of the various day rate employees does not prevent collective treatment.

88. Wells has no interests contrary to, or in conflict with, the members of the FLSA, Pennsylvania, and California Classes. Like each member of the proposed classes, Wells has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

89. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

90. Absent this action, many FLSA, Pennsylvania, and California Class Members likely will not obtain redress of their injuries and Colonial will reap the unjust benefits of violating the FLSA, the PMWA, and California law.

91. Furthermore, even if some of the FLSA, Pennsylvania, and California Class Members could afford individual litigation against Colonial, it would be unduly burdensome to the judicial system.

92. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

93. The questions of law and fact common to each of the FLSA, Pennsylvania, and California Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Colonial employed the FLSA, Pennsylvania, and California Class Members within the meaning of the FLSA, the PMWA, and California law;

    b. Whether the FLSA, Pennsylvania, and California Class Members were exempt from overtime;

    c. Whether Colonial's decision to not pay overtime to the FLSA Class Members was made in good faith; and

    d. Whether Colonial's violation of the FLSA was willful.

94. Wells's claims are typical of the FLSA, Pennsylvania, and California Class Members. Wells and the FLSA, Pennsylvania, and California Class Members have sustained damages arising out of Colonial's illegal and uniform employment policy.

95. Wells knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

96. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

97. All the Class Members, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of 40 hours per week. Although

the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

### FIRST CAUSE OF ACTION—VIOLATION OF THE FLSA

98. Wells incorporates each other allegation.

99. Colonial has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by compensating employees at a day rate in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating the FLSA Class Members for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

100. Colonial knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Class Members overtime compensation.

101. Colonial's failure to pay overtime compensation to these FLSA Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

102. Accordingly, Wells and the FLSA Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF PENNSYLVANIA WAGE LAWS

103. Wells incorporates each other allegation.

104. The conduct alleged violates the Pennsylvania Wage Laws (43 PA. STAT. ANN. § 333.104).

105. At all relevant times, Colonial was subject to the requirements of the Pennsylvania Wage Laws.

106. At all relevant times, Colonial employed Wells and each Pennsylvania Class Member as an "employee" within the meaning of the PMWA.

107. The PMWA requires employers like Colonial to pay employees at 1.5 times the regular rate of pay for hours worked in excess of 40 hours in any one week. Wells and each Pennsylvania Class Member are entitled to overtime pay under the PMWA.

108. Wells and the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

109. Wells and the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Colonial, as provided by the PMWA.

**THIRD CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW**

110. Wells incorporates each other allegation.

111. The California Labor Code requires that all employees, including Wells and the California Class, receive 1.5 times their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

112. Despite working over 8 hours a day as part of their normal and regular shift, Wells and the California Class did not receive any overtime compensation for all hours worked over eight in one day.

113. The California Labor Code also requires that all employees, including Wells and the California Class, receive two times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

114. Although Wells and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

115. The California Labor Code requires that all employees, including Wells and the California Class, receive two times the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

116. Although Wells and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

117. This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Wells and the California Class to recover unpaid

balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

## FOURTH CAUSE OF ACTION—FAILURE TO PROVIDE COMPENSATION FOR MISSED MEAL AND REST PERIODS

118. Wells incorporates each other allegation.

119. In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Wells and the California Class had the right to take two uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10 minute rest period for every four hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001.

120. Although the California Labor Code requires that all employees, including Wells and the California Class, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Wells and the California Class did not receive two meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

121. As a pattern and practice, Colonial did not provide Wells and the California Class with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

122. Although the California Labor Code requires that all employees, including Wells and the California Class, receive a 10-minute rest period for every four hours worked, Wells and the California Class did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

123. As a pattern and practice, Colonial did not provide Wells and the California Class with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

124. Wells and the California Class are entitled to receive compensation, at their regular rate of pay, of one hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

125. Colonial's policy failed to provide Wells and the California Class with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Wells and the California Class in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

### FIFTH CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS

126. Wells incorporates each other allegation.

127. California Labor Code section 226 requires Colonial to keep accurate records regarding the rates of pay for their California employees and provide that information to Wells and the California Class with their wage payment.

128. Because Colonial failed to pay Wells and the Putative Class Members lawful wages, it did not maintain accurate records of Wells and the California Class' daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Wells and the California Class with their wages.

129. This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Wells and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

### SIXTH CAUSE OF ACTION—MISCLASSIFICATION PENALTIES

130. Wells incorporates each other allegation.

131. Colonial has maintained a uniform policy with respect to Wells and the California Class hired by Colonial to work in California.

132. Under this uniform policy, Colonial has misclassified Wells and the California Class as independent contractors.

133. Colonial, at all relevant times, retained control over the manner and means of accomplishing its desired business results, and retained control over its operations, such that an employer-employee relationship was created between Colonial and Wells, and between Colonial and the California Class.

134. Through its misclassification of Wells and the California Class, Colonial has engaged in a pattern and practice of willful misclassification of its employees as independent contractors for its own financial benefit.

135. Wells and the California Class are entitled to recover the civil penalties specified in the Labor Code for Colonial's violations of section 226.8 in an amount of not less than $10,000 and up to $25,000 for each violation, in addition to any other penalties or fines permitted by law.

136. Wells and the California Class are entitled to recover their reasonable attorney fees and costs in bringing this action.

137. Colonial is subject to an order requiring it to provide public notice of its violation of California Labor Code section 226.8, if the Court determines that a violation has been committed. Cal. Lab. Code § 226.8(e), (f).

### SEVENTH CAUSE OF ACTION—ADVISING MISCLASSIFICATION

138. Wells incorporates each other allegation.

139. Colonial advised other persons to treat Wells and the California Class Members as independent contractors.

140. Colonial did so for money or other valuable consideration.

141. Colonial did so to avoid the employee status of Wells and the California Class Members.

142. Colonial did so knowing the Wells and the California Class Members were employees and not independent contractors.

### EIGHTH CAUSE OF ACTION—WAITING TIME PENALTIES

143. Wells incorporates each other allegation.

144. At all relevant times, Colonial was required to pay Wells and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

145. As a result of Colonial's alleged California Labor Code violations, Colonial regularly failed to pay Wells and the California Class their final wages pursuant to California Labor Code

1  sections 201 to 204, and accordingly Colonial owes waiting time penalties pursuant to California Labor Code section 203.

146. The conduct of Colonial, in violation of Wells and the California Class' rights, was willful and was undertaken by the agents, employees, and managers of Colonial.

147. Colonial's willful failure to provide Wells and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

148. Therefore, Wells and the California Class who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### NINTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

149. Wells incorporates each other allegation.

150. Colonial has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; (4) accurate wage statements; and (5) waiting time penalties.

151. As a result of Colonial's failure to comply with federal and state law, Colonial has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

152. The relevant acts by Colonial occurred within the four years preceding the filing of this action.

153. On information and belief, Colonial has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Wells and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

154. Wells and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

155. Wells and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting Colonial from engaging in the violations and other misconduct referred to above.

156. Colonial is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

**RELIEF SOUGHT**

157. Wells prays for judgment against Colonial as follows:

    a. For an order certifying a class action under Rule 23 for the purposes of the claims under the PMWA and California law;

    b. For an order certifying this case as a collective action for the purposes of the FLSA claims;

    c. For an order finding Colonial liable for violations of state and federal wage laws with respect to Wells and all Class Members covered by this case;

    d. For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Wells and all Class Members covered by this case;

    e. For a judgment awarding Wells and all Class Members covered by this case their costs of this action;

    f. For a judgment awarding Wells and all Class Members covered by this case their attorneys' fees;

    g. For a judgment awarding Wells and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

    h. For all such other and further relief as may be necessary and appropriate.

Date: <u>November 27, 2019</u>

Respectfully submitted,

By: _/s/ Matthew S. Parmet_____
    **Matthew S. Parmet**
    (CSB # 296742)
    matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone  713 999 5228
fax      713 999 1187

**Attorneys for Plaintiff**